IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER ANDREW KELLEY,

      Plaintiff,

   v.                           No. 3:18-CV-1082-GLS-DEP
                                    **AMENDED COMPLAINT**

ITHACA COLLEGE,
DANIEL H. ROBINSON,
and SUSAN BASSETT,

      Defendants.

## CIVIL COMPLAINT

Plaintiff, Christopher Andrew Kelley, by undersigned counsel, files this civil action and alleges the following:

### I. Introduction

1.    The plaintiff Christopher Kelley, a 2016 Ithaca College graduate, was a dedicated and successful member of the school's crew team for three years.  As a freshman, he was outed as gay at a crew party and became the immediate target of abuse by some teammates, permitted if not sanctioned by his coach, and by the coach himself.

2.    The plaintiff embraced his identity and became a leader on campus, co-founding a chapter of a national gay-athletes organization and speaking up on behalf of gay students and athletes on campus.  As he did, he and other gay crew members were targeted for verbal abuse and saw their positions and roles on the team directly affected.

3.    In the summer before his senior year, Kelley told his coming-out story in a national magazine.  In the days and weeks following publication, while Kelley was away from campus for the summer, Ithaca's men's crew coach called him to repeatedly berate him for

1

publishing the story.  Over the July 4th weekend alone, the coach called Kelley about ten separate times.

4.     When Kelley returned to Ithaca for his senior year, the coach, athletic director, and the college threatened a dizzying array of punishments for Kelley and for the entire crew team.  In one of these discussions, the coach told Kelley – among other things – that plaintiff needed to stop getting upset when called "fag".

5.     This behavior made Kelley's continued participation on the team impossible, and Kelley was forced to leave both the team and, by extension, the social circle he had spent the first three years of college developing.

6.     The defendants' ostensible excuse for this behavior – that Kelley's article was objectionable because it described collegiate drinking – is incredible in light of the program's undeniable knowledge that its college athletes had parties, belied by the coach's focus on Kelley's sexuality, and further undermined by an ongoing pattern and practice of endorsing discrimination against gay members of the men's crew team.

**II. Jurisdiction and Venue**

7.     The jurisdiction of this court is invoked pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), and Section 1 of the Civil Rights Act of 1871, 42 U.S.C. §1983; 28 U.S.C. §§1331 and 1343(a)(3) and (a)(4).  In addition, the Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

8.     Venue is proper in this District under 28 U.S.C. §§ 1391(a) and (b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### III. The Parties

9.      Plaintiff Christopher Andrew Kelley ("Plaintiff") is an adult who lives in Brooklyn, New York. At all times relevant hereto, he was a resident of Mount Lebanon, Pennsylvania, was a student at Ithaca College, was a member of the Ithaca College men's crew team, and was gay.

10.     Defendant Ithaca College ("IC"), is a private, nonsectarian liberal arts college in Ithaca New York; and a recipient of federal and New York state funds.  Its principal place of business is 953 Danby Road, Ithaca New York 14850.

11.     Upon information and belief, Ithaca College could not maintain its level of services without federal funds.

12.     As a condition of receiving such federal funds, Ithaca College is required to comply with Title IX of the Education Amendments of 1972.

13.     Defendant Daniel H. Robinson ("D. H. Robinson"), at all times relevant hereto, was the Ithaca College Men's Crew Team Coach, and therefore is a state actor, who acted and failed to act under color of state law. D.H. Robinson resides at 310 2nd St., Ithaca, NY 14850.

14.     Defendant Susan Bassett ("Bassett"), at all times relevant hereto, was the Ithaca College Athletic Director, had supervisory authority over B. M. Robinson and D. H. Robinson, and therefore is a state actor, who acted and failed to act under color of state law. Bassett's business address is 953 Danby Road, Ithaca, NY 14850.

### III. Factual Background

15.     Plaintiff was a student at Ithaca College from 2012 - 2016, when he graduated.

16.     In December 2012, i.e. at the end of the fall semester of plaintiff's freshman year, plaintiff was outed as being gay while at a party attended by members of the IC men's and women's crew team.

17.     A male crew team member then alerted coach D. H. Robinson that the plaintiff was gay so that "he knew what to do with" plaintiff.

18.     As a result of the outing, plaintiff was forced to make a public Facebook post during finals week to the men's novice crew team regarding his sexual orientation, letting the other four freshmen men's crew team members know that plaintiff was gay.

19.     During the 2013 - 2014 school year, i.e. plaintiff's sophomore year, D. H. Robinson overheard a portion of a conversation in which plaintiff was discussing a gay-related subject matter with a teammate. D. H. Robinson accused plaintiff of being sexually perverse after hearing the portion of this conversation.

20.     That same year D. H. Robinson nominated plaintiff to be a member of IC's Leadership Academy, which was headed by Greg Shelley, who is both a pastor and a professor at IC.

21.     That same year a gay sophomore member of the IC men's crew team was being harassed and abused by a freshman member of the IC men's crew team, and that sophomore quit the IC men's crew team and attempted suicide. D. H. Robinson did nothing about this, and in fact, D. H. Robinson permitted the freshman rower who engaged in the abuse to practice with the team even though the freshman rower was written up five times for calling his gay roommate a "faggot" and being placed on probation for this.

22.     In his sophomore year plaintiff and three other students formed the local IC chapter of Athlete Ally, in international organization gay athletes formed during the Olympics in Sochi.

23.     Following this, plaintiff started working with the entire crew team to create a culture of respect. Specifically, Plaintiff encouraged everyone to be respectful and not use homophobic language, and plaintiff informed D. H. Robinson of the dangers of outing, gay-bullying, and how it directly influenced the culture of the crew team.

24.     During the 2014 - 2015 school year, i.e. plaintiff's junior year, two gay rowers were outed as gay at a crew party during the first week back to school, and were harassed at the party by a member of the IC men's crew team. One of those members elected to quit the IC men's crew team.

25.     Plaintiff brought this situation to D. H. Robinson's attention, and reminded D. H. Robinson that this is exactly what happened to plaintiff. D. H. Robinson promised to have a meeting and get into the issue, but this meeting never occurred.

26.     D. H. Robinson failed to assist with counseling sessions for the outed rowers, or support them in any way. Further, the team members who outed and harassed the gay rowers were not reprimanded or disciplined for their actions, and nor did they suffer any consequences for their actions.

27.     From September 2013 November 2013, i.e. during the fall of plaintiff's junior year, three closeted gay athletes quit the team because they did not feel comfortable with the homophobic culture.

28.     In March 2014, i.e. the spring of plaintiff's junior year, plaintiff was interviewed by the student newspaper, *The Ithacan*, for his vocal opposition to the Athletic Department and its use of $3.4 million worth of funding to rebrand Ithaca athletics as "one team".

29.     Plaintiff's interview in *The Ithacan* addressed the need for safety precautions to be in place for LGBTQ+ athletes, and that perhaps some of the funding should be utilized for that purpose.

30.     In the same interview, Plaintiff suggested that the Leadership Academy incorporate the topic of tolerance into its teaching, so that homophobic athletes would be held accountable for their actions and words.

31.     This interview was an expression of plaintiff's interest in creating an athletic safe space at IC for LGBTQ+ athletes, in light of his experiences at IC, as well as the experiences of other gay athletes at IC.

32.     This article drew harsh criticism from Bassett in her role as Athletic Director of IC, and the Director of the Leadership Academy, Greg Shelley. Specifically, Bassett commented in the same article that LGBTQ Athletic issues have no place in the Leadership Academy.

33.     At IC the men's crew team ranks its rowers by what boat they are assigned to row in during the races. The top of varsity boat is the 1V. The next boat is the 2V. The third grouping of rowers are the 3V.

34.     During IC's 2014 - 2015 crew season plaintiff was assigned to the 3V boat.

35.     That year the 3V boat took the Silver Medal at State's and the Bronze Medal at ECAC's. The 1V and the 2V boats each failed to medal in these events.

36.     At the year-end banquet at the conclusion of the crew season, plaintiff had the votes to be elected Captain for the 2015 - 2016 school year. However, D. H. Robinson

announced that for the first time, he was going to appoint an underclassman, i.e.. a rising Junior as Captain rather than have a vote to decide team Captain by election.

37.     In the summer of 2015 plaintiff wrote a letter to the editor which was published in the *Pittsburgh Post-Gazette*.

38.     In this letter to the editor, plaintiffs identified himself as being a member of the IC men's crew team, and member and co-president of the IC chapter of Athlete Ally.

39.     Following publication of this letter to the editor, plaintiff forwarded the letter to the editor to *Outsports* magazine. *Outsports* contacted plaintiff and asked him to write his coming out story to coincide with June as national pride month.

40.     Plaintiff's article in *Outsports* magazine was published on or about June 28, 2015.

41.     On a Thursday in July 2015 D. H. Robinson began calling plaintiff on the telephone, and proceeded to call plaintiff approximately 10 times over the long weekend.

42.     During these telephone calls, D. H. Robinson verbally berated plaintiff.

43.     Specifically, D. H. Robinson told plaintiff that "you [plaintiff] embarrassed me", "I can't believe you would write something like this", "it's horrible", "it's a disgrace", "it's awful", and "you should be ashamed of yourself."

44.     At no time during any of these telephone conversations did D. H. Robinson indicate to plaintiff that he [plaintiff] would be punished in any way for any reason, including but not limited to, plaintiff's article in *Outsports* magazine.

45.     In late July or early August 2015, D. H. Robinson contacted the plaintiff again.

46.     During this discussion, D. H. Robinson stated to plaintiff that plaintiff and the IC men's crew team would be punished because of plaintiff's having been "hazed".

47.     D. H. Robinson informed plaintiff that because plaintiff had been hazed, the IC men's crew team was being disqualified from the "Challenge at the Canal" race, and that plaintiff himself was being suspended for the entire fall race season.

48.     According to D. H. Robinson, this punishment was decided upon by Bassett in her capacity as IC's Athletic Director.

49.     In response to as punishment, plaintiff contacted Bassett. He informed her that he had not been hazed, this situation was not about hazing, and that everyone should row.

50.     Bassett emailed plaintiff while she was on her summer vacation, and informed plaintiff that the decision to suspend plaintiff was made by D. H. Robinson and women's crew coach Becky Robinson in consultation with her [Bassett].

51.     Bassett also informed plaintiff by email that the team was not being punished for plaintiff's article, but instead was being held accountable for the behavior described in the article. Bassett also informed plaintiff by email that his article was damaging to the IC crew team.

52.     Upon information and belief, this explanation was pretextual.  Among other things, it was known to Robinson that the crew team had parties, that these parties included alcohol, and that underage students participated in these parties.  Furthermore, if the concern was about "hazing", it is impossible to see why the purported target of the hazing (that is, Kelley) would be punished more than others who participated in the hazing.

53.     In her email Bassett informed plaintiff that the suspension of the plaintiff and other actions that will take place as a result of the information shared came from the coaches with Bassett's full support.

54.     Plaintiff returned to school for the 2015 - 2016 school year, i.e. his senior year at IC, and on the first day of school, plaintiff met with Luca Mauer, the director of IC's LGBT Center.

55.     Mauer suggested that plaintiff's situation sounded like a Title IX issue, and asked plaintiff if he wanted a referral to the Title IX office.

56.     Plaintiff declined the referral and indicated that he [plaintiff] had a meeting with Bassett scheduled for later that same day.

57.     When plaintiff met with Bassett, a printed copy of plaintiff's *Outsports* article was on Bassett's desk in front of her. At this meeting Bassett announced the punishment to be incurred for this situation as being (1) that the men and women's IC crew teams were disqualified from the "Challenge at the Canal" race; (2) that the men's and women's teams were to have a mandatory meeting with Greg Shelley, Director of IC's Leadership Academy; (3) that the plaintiff was to lead in alcohol awareness program for the "novices" (first year rowers) in order to let them know that drinking was not appropriate; and (4) that plaintiff was suspended for the first two races of the fall race season, but that he could still practice with team.

58.     Following this meeting, the IC men's crew team gave plaintiff the silent treatment, inasmuch as they all (except for one senior rower) refused to talk to him.  None of the other rowers would allow plaintiff to ride in their cars to and from the boathouse for daily crew practice.  None of the other rowers will allow plaintiff to eat in the school cafeteria with them.

59.     Plaintiff was not assigned to a boat during practice, and in fact only rowed once between his meeting with Bassett and September 9, 2015. The only time plaintiff was permitted to row was when a fill-in was needed for the novice / learn to row boat.

60.     On September 9, 2015, D. H. Robinson scheduled a meeting of the IC men's crew team.

61.     Immediately prior to meeting, D. H. Robinson said to plaintiff that he [D. H. Robinson] had just learned what a "micro aggression" was.  D. H. Robinson then told plaintiff not to be upset when he is called a "Fag", and that he should not sweat the small stuff.

62.     At the September 9, 2015 meeting, plaintiff was told to stand next to D. H. Robinson. Then D. H. Robinson proceeded to read the first paragraph of plaintiff's *Outsports* article to the IC men's crew team. Upon the conclusion of his reading, D. H. Robinson asked the team what was wrong with the activities depicted in the first paragraph of plaintiff's *Outsports* article. After D. H. Robinson asked the questions, no one responded, i.e. thus, indicating that no one thought that there was anything wrong with the activity referenced in the first paragraph of the article.

63.     Finally, a coxswain spoke up in favor of plaintiff. D. H. Robinson said that the meeting was not called for that purpose.

64.     A meeting of the IC men's and women's crew teams was called for September 10, 2015.

65.     Following the September 9, 2015 and before the September 10, 2015 meeting, plaintiff again ate alone in school cafeteria, and continued to feel uncomfortable with how he was being treated by D. H. Robinson and the other members of the IC men's crew team.

66.     On September 10, 2015, plaintiff was constructively terminated from the IC men's crew team, and/or forced to quit the IC men's crew team because he was so uncomfortable with how he was being treated by D. H. Robinson and the men's crew team that he felt he could not remain a member of the team.

67.     At all times relevant hereto, a certain culture on the men's crew team was created and maintained by D. H. Robinson. At all times relevant hereto, straight members of the men's crew team made D. H. Robinson feel like "one of the guys". Those straight members were rewarded with better boat seats in races, i.e. straight members were assigned to the 1V and 2V boats.

68.     At all relevant times, those straight members of the IC men's crew team were neither reprimanded, nor disciplined, for calling gay team members "fag", "faggot", or other derogatory and repugnant terms, even though the straight members of the IC men's crew team were using such terms and addressing gay team members in front of D. H. Robinson.

69.     By September 2015 approximately eight gay rowers had quit the IC men's crew team, not including plaintiff.

70.     On September 10, 2015, IC's president was notified that plaintiff would not be attending the mandatory September 10, 2015 crew meeting. IC's president referred that notification to Nancy Pringle, Senior Vice president and General Counsel of IC.

71.     On October 29, 2015, IC announced that it had created a plan to make the college a more inclusive, diverse and welcoming community for all regardless of … sexual orientation…. IC noted in its announcement that several incidents this fall [the fall of 2015] have served as fresh and painful reminders of a longstanding problem on Ithaca College's campus surrounding issues of racism and cultural bias. IC also noted that these incidents were not isolated events, but were in fact, evidence of a persistent and far-reaching problem.

72.     On October 29, 2015 a detailed account of the circumstances of plaintiff's having been constructively terminated from and / or forced to quit the IC men's crew team was provided

11

to Ms. Pringle. This detailed account included the Pittsburgh Post Gazette letter to the editor, the *Outsports* article, and D. H. Robinson's response to the *Outsports* article.

73.     On November 5, 2015, Ms. Pringle indicated that she would be discussing the plaintiff's situation with an investigating officer, and eventually both an internal and external investigation were commenced.  The final results of the investigation, to the extent there were any final results, were not released.

74.     On December 21, 2015, Ms. Pringle entered into an agreement to waive the defense of timeliness and statute of limitations in connection with this matter.

75.     It is believed and therefore averred that D. H. Robinson has continued to harass gay members of the IC men's crew team up to the present time.

### Count I
### Title IX – Disparate Treatment
### Plaintiff v. Ithaca College

76.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 75 as if fully restated.

77.     At all relevant times, Ithaca College receives federal assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq.

78.     As coach of the men's crew team, D. H. Robinson had authority, and in fact exercised his authority, to make decisions regarding the treatment of members of the crew team.

79.     D. H. Robinson treated plaintiff and other gay men differently on account of their sexual orientation.  This disparate treatment included sanctioning name calling by team members, using anti-gay slurs, favoring heterosexual athletes in the selection of team members to participate in particular activities, and selecting a heterosexual athlete rather than plaintiff to be a captain in contravention of established precedent.

12

80.     IC employed D. H. Robinson and therefore could have taken action to prevent his conduct from occurring.  IC employees, including Bassett, were aware of his conduct and capable of stopping it. IC went so far as to reinstate D. H. Robinson as men's crew team coach, thereby failing—again—to take action to prevent his conduct from reoccurring.

81.     D. H. Robinson's conduct was so severe, pervasive, and offensive that it deprived plaintiff of access to the educational opportunities or benefits provided by IC.

82.     Thus, IC, on the basis of plaintiff's sexual orientation, subjected plaintiff to discrimination under an education program receiving Federal financial assistance, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a).

WHEREFORE, plaintiff demands judgment against defendant IC for denial of his rights under Title IX to not be excluded from participation in, denied the benefit of, and not be subjected to discrimination under an education program and/ or activity receiving Federal financial assistance, and damages as follows:

a.      That defendant IC be permanently enjoined from discriminating against plaintiff because of his sexual orientation;

b.      That defendant IC be permanently enjoined from retaliating against plaintiff because of this sexual orientation or the assertion of this action;

c.      That plaintiff be awarded actual and consequential damages in an amount to be proven at trial, plus interest;

d.      That plaintiff be awarded compensatory damages to compensate for pain, suffering, emotional distress, and humiliation that plaintiff has suffered as a result of defendant IC's conduct;

e.      That plaintiff be awarded against defendant IC the costs and expenses of this

litigation, and, pursuant to 42 U.S.C. §1988, a reasonable attorney's fee; and

     f.     That plaintiff be awarded such further relief as this Court deems to be just and proper.

## Count II
### Title IX −Deliberate Indifference to Harassment
### Plaintiff v. Ithaca College

     83.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 82 as if fully restated.

     84.     At all relevant times, Ithaca College receives federal assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq.

     85.     At all times relevant hereto, D. H. Robinson engaged in unwanted, unwelcome, harassing and discriminatory conduct directed at plaintiff and other gay men who were members of the IC men's crew team.

     86.     D. H. Robinson's conduct, as described above, was undertaken because plaintiff was a gay man.

     87.     D. H. Robinson's conduct was severe and it was pervasive because it occurred consistently over time and because it was harmful.

     88.     D. H. Robinson's conduct detrimentally affected plaintiff because it disturbed his well-being and made him afraid to continue to be a member of the IC men's crew team.

     89.     D. H. Robinson's conduct would detrimentally affect a reasonable member of the IC men's crew team, such as plaintiff. D. H. Robinson's role as IC men's crew team coach vested him with supervisory power over plaintiff because he could cut plaintiff from the men's crew

team at his (D. H. Robinson's) discretion, and he was also provided with the authority by IC, B. M. Robinson, and Bassett while engaged in IC men's crew team activities.

90.     IC had actual and constructive knowledge of D. H. Robinson's past conduct, but allowed him to work, unsupervised, with the IC men's crew team which included both straight and gay athletes.

91.     IC knew or should have known of D. H. Robinson's conduct during that time. When D. H. Robinson was men's crew team coach, and failed to take prompt and effective action reasonably calculated to prevent and remedy the harassment to which D. H. Robinson subjected plaintiff.

92.     IC was deliberately indifferent to D. H. Robinson's conduct directed at plaintiff, As well as other Male gay members of its men's crew team.

93.     IC exercised substantial control over both D. H. Robinson and the context in which D. H. Robinson's conduct occurred.

94.     IC employed D. H. Robinson and therefore could have taken action to prevent his conduct from occurring.

95.     IC went so far as to reinstate D. H. Robinson as men's crew team coach, thereby failing—again—to take action to prevent his conduct from reoccurring.

96.     D. H. Robinson's conduct was so severe, pervasive, and offensive that it deprived plaintiff of access to the educational opportunities or benefits provided by IC.

97.     Thus, IC, on the basis of plaintiff's sexual orientation, subjected plaintiff to discrimination under an education program receiving Federal financial assistance, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a).

WHEREFORE, plaintiff demands judgment against defendant IC for denial of his rights under Title IX to not be excluded from participation in, denied the benefit of, and not be subjected to discrimination under an education program and/ or activity receiving Federal financial assistance, and damages as follows:

a.      That defendant IC be permanently enjoined from discriminating against plaintiff because of his sexual orientation;

b.      That defendant IC be permanently enjoined from retaliating against plaintiff because of this sexual orientation or the assertion of this action;

c.      That plaintiff be awarded actual and consequential damages in an amount to be proven at trial, plus interest;

d.      That plaintiff be awarded compensatory damages to compensate for pain, suffering, emotional distress, and humiliation that plaintiff has suffered as a result of defendant IC's conduct;

e.      That plaintiff be awarded against defendant IC the costs and expenses of this litigation, and, pursuant to 42 U.S.C. §1988, a reasonable attorney's fee; and

f.      That plaintiff be awarded such further relief as this Court deems to be just and proper.


**Count III**
**Title IX – Retaliation**
**Plaintiff v. Ithaca College**

98.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 97 as if fully restated.

16

99.     At all relevant times, Ithaca College receives federal assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq.

100.    Plaintiff repeatedly reported his concerns about the treatment of himself and other gay members of the men's crew team to responsible Ithaca College employees with the authority to address these concerns.

101.    When plaintiff made such reports, Ithaca College, through its coach and athletic director, retaliated against him.

102.    These actions, and inactions, by these individuals amounted to deliberate indifference by Ithaca College to the reports, and to Plaintiffs' rights to not be subject to sexual discrimination, harassment, or abuse while they participated in the educational programs and activities, including, but not limited to, the men's crew program while students at Ithaca College.

103.    Thus, IC, on the basis of plaintiff's sexual orientation, subjected plaintiff to discrimination under an education program receiving Federal financial assistance, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a).

WHEREFORE, plaintiff demands judgment against defendant IC for denial of his rights under Title IX to not be excluded from participation in, denied the benefit of, and not be subjected to discrimination under an education program and/ or activity receiving Federal financial assistance, and damages as follows:

a.     That defendant IC be permanently enjoined from discriminating against plaintiff because of his sexual orientation;

b.     That defendant IC be permanently enjoined from retaliating against plaintiff because of this sexual orientation or the assertion of this action;

c.      That plaintiff be awarded actual and consequential damages in an amount to be proven at trial, plus interest;

d.      That plaintiff be awarded compensatory damages to compensate for pain, suffering, emotional distress, and humiliation that plaintiff has suffered as a result of defendant IC's conduct;

e.      That plaintiff be awarded against defendant IC the costs and expenses of this litigation, and, pursuant to 42 U.S.C. §1988, a reasonable attorney's fee; and

f.      That plaintiff be awarded such further relief as this Court deems to be just and proper.


**Count IV**
**42 USC §1983**
**Plaintiff v. Daniel H. Robinson**

104.    Plaintiff incorporates by reference the allegations in paragraph 1 through 103 as if fully restated herein.

105.    The conduct of D. H. Robinson, as set forth at length above, intentionally created a hostile educational environment because of plaintiff's sexual orientation, and therefore D. H. Robinson intentionally discriminated against plaintiff because of his sexual orientation.

106.    Additionally, D. H. Robinson, as set forth above, made verbal comments of such a harassing, homophobic, hazing and ridiculing nature toward plaintiff.

107.    Plaintiff did not welcome D. H. Robinson's conduct.

108.    Because plaintiff would not accede to D. H. Robinson's unwelcome conduct, Plaintiff suffered adverse consequences because he was forced to remain in an environment where he was exposed to D. H. Robinson's constant adverse sexual orientation based conduct.

109.   Because plaintiff would not accede to D. H. Robinson's unwelcome conduct, plaintiff suffered adverse consequences because he was constructively discharged from, and/or forced to quit the IC men's crew team.

110.   D. H. Robinson relied upon his apparent or actual authority over plaintiff to bully plaintiff because of plaintiff's sexual orientation.

111.   Thus, D. H. Robinson, a person with supervisory authority over plaintiff, made submission to and toleration of his conduct an implicit term or condition of plaintiff's access to education at IC.

112.   D. H. Robinson's action toward plaintiff, as set forth at length above, created a sexually hostile educational environment and therefore deprived plaintiff of Equal Protection of the law, in violation of the 14th Amendment of the United States Constitution and 42 U.S.C. §1983.

113.   At all times relevant hereto, D. H. Robinson, as IC's men's crew team coach, acted under color of state law, inasmuch as his actions, as set forth at like the above, constitute misuse of power possessed solely by virtue of state law and made possible only because D. H. Robinson was clothed with the authority of state law.

114.   D. H. Robinson's actions toward plaintiff for intentional and were undertaken with reckless disregard of plaintiff's Federally protected right to an educational environment free from sexual harassment and discrimination because of his sexual orientation.

115.   The conduct of D. H. Robinson, as set forth above, was a conscious choice on his part to disregard the plaintiff's constitutional rights, and deprived plaintiff, under color of state law, of Equal Protection of the Law in violation of the 14th Amendment of the U.S. Constitution and 42 U.S.C. §1983.

19

116.     As a direct and proximate result of D. H. Robinson's intentional and reckless

actions, plaintiff has sustained the following injuries and damages:

a.      Emotional harm;

b.      Severe depression;

c.      Deprivation of ordinary pleasures of life; and

d.      Pain and suffering caused by the exposure to almost regular and constant hostile
educational environment.

WHEREFORE, plaintiff demands judgment against defendant D. H. Robinson,

individually, for deprivation of his right to Equal Protection of the Law and damages as follows:

a.      that defendant D. H. Robinson be permanently enjoined from discriminating
against plaintiff because of his sexual orientation;

b.      the defendant be permanently enjoined from retaliating against plaintiff because
of his sexual orientation his assertion of this action;

c.      the plaintiff be awarded actual and consequential damages in an amount to be
proven at trial, plus interest;

d.      that plaintiff be awarded compensatory damages to compensate for pain,
suffering, emotional distress, and humiliation that the plaintiff has suffered as a
result of defendant D. H. Robinson's conduct;

e.      that plaintiff be awarded punitive damages in amount sufficient to punish
defendant D. H. Robinson and to deter similar conduct;

f.      that plaintiff be awarded against defendant D. H. Robinson the costs and expenses
of this litigation, and, pursuant to 42 USC 1988, hey reasonable attorney's fee;
and

g.      that plaintiff be awarded such further relief as this court deems to be just and
proper.

**Count V**
**42 USC §1983**
**Plaintiff v. Susan Bassett**

117.     Plaintiff incorporates by reference the allegations in paragraph one through 99 as if fully restated herein.

118.     As set forth above, defendant Bassett was the IC Athletic Director, and therefore had supervisory authority over defendant D. H. Robinson.

119.     Bassett's supervision of D. H. Robinson was reckless because she knew of D. H. Robinson's conduct regarding gay men's crew team members.

120.     Bassett's supervision of D. H. Robinson was likewise grossly negligent because she knew or in the exercise of reasonable care, should have known of D. H. Robinson's conduct regarding Gay men's crew team members.

121.     Bassett's supervision of D. H. Robinson was likewise reckless because knowing of D. H. Robinson's conduct regarding gay men's crew team members, she failed to supervise D. H. Robinson, and therefore allowed plaintiff's right to Equal Protection of the Law to be violated.

122.     Knowing of D. H. Robinson's prior sexual orientation related conduct toward gay members of the IC men's crew team, Bassett were deliberately indifferent to the consequences of continuing to employ D. H. Robinson, and they were likewise reckless in failing to supervise D. H. Robinson, and allowed D. H. Robinson to have essentially unfettered access to plaintiff and other gay members of the IC men's crew team.

123.     As a result of the unfettered access that Bassett permitted, D. H. Robinson was able to engage in the conduct set forth above, and therefore was able to deny plaintiff Equal Protection of the Law.

124.    Moreover, Bassett tolerated the misbehavior of D. H. Robinson, and by tolerating D. H. Robinson's conduct, facilitated D. H. Robinson to engage in the most recent conduct as set forth above.

125.    The conduct of Bassett, as set forth at length above, intentionally permitted D. H. Robinson to create a hostile educational environment because of the plaintiff's sexual orientation and therefore Bassett intentionally discriminated against plaintiff because of his gender and sexual orientation.

126.    Thus, Bassett, a person with supervisory authority over D. H. Robinson tolerated D. H. Robinson's sexual conduct and made that sexual conduct and explicit and implicit term or condition of plaintiff's access to education at IC.

127.    The actions and failures to act of Bassett as set forth above, allowed the creation of a sexually hostile educational environment and therefore deprived plaintiff of Equal Protection of the Law, in violation of 14th Amendment of the United States Constitution and 42 U.S.C. §1983.

128.    At all times relevant hereto, Bassett, as IC's Athletic Director, acting under color of state law, inasmuch as their actions and failures to act, as set forth at length above, constitute misuse of power possessed solely by virtue of state law and made possible only because Bassett was clothed in the authority of state law.

129.    The actions and failures to act of Bassett, were intentional and were undertaken with reckless disregard of plaintiff's federally protected right to an educational environment free from sexual harassment and discrimination because of his sexual orientation.

130.    The conduct by Bassett as set forth above, was a conscious choice on their part to disregard the plaintiff's constitutional rights, and deprived the plaintiff, under color of state law,

22

of Equal Protection of the Law in violation of the 14th Amendment of the U.S. Constitution and

42 U.S.C. §1983.

131.    As a direct and proximate result of Bassett's intentional and reckless actions,

plaintiff has sustained the following injuries and damages:

a.      Emotional harm;

b.      Severe depression;

c.      Deprivation of ordinary pleasures of life; and

d.      Pain and suffering caused by the exposure to almost regular and constant hostile
        educational environment.


WHEREFORE, plaintiff demands judgment against defendant Bassett,

individually, for deprivation of his right to Equal Protection of the Law and damages as follows:

a.      that defendant Bassett be permanently enjoined from discriminating
        against plaintiff because of his sexual orientation;

b.      the defendant be permanently enjoined from retaliating against plaintiff because
        of his sexual orientation his assertion of this action;

c.      the plaintiff be awarded actual and consequential damages in an amount to be
        proven at trial, plus interest;

d.      that plaintiff be awarded compensatory damages to compensate for pain,
        suffering, emotional distress, and humiliation that the plaintiff has suffered as a
        result of defendant Bassett's conduct;

e.      that plaintiff be awarded punitive damages in amount sufficient to punish
        defendant Bassett and to deter similar conduct;

f.      that plaintiff be awarded against defendant Bassett the costs and expenses
        of this litigation, and, pursuant to 42 USC 1988, hey reasonable attorney's fee;
        and

g.      that plaintiff be awarded such further relief as this court deems to be just and
        proper.

23

**Count VI**
**Intentional Infliction of Emotional Distress**
**Plaintiff v. D. H. Robinson**

132.    Plaintiff incorporates by reference paragraphs 1 through 131 as if fully restated

herein.

133.    Defendant, D. H. Robinson, through his actions toward Plaintiff, subjected

Plaintiff to the intentional infliction of emotional distress.

134.    As a direct result of Defendants' actions toward Plaintiff, as set forth more fully

above, Plaintiff sustained injuries and damages, some or all of which may be permanent in

nature.

135.    As a direct and proximate result of Defendants' negligent, intentional and reckless

actions, plaintiff has sustained the following injuries and damages:

a.    Emotional harm;

b.    Severe depression;

c.    Deprivation of ordinary pleasures of life; and

d.    Pain and suffering caused by the exposure to almost regular and constant hostile
      educational environment.

WHEREFORE, plaintiff demands judgment against defendants, individually, jointly and

severally, for his damages as follows:

a.    the plaintiff be awarded actual and consequential damages in an amount to be
      proven at trial, plus interest;

b.    that plaintiff be awarded compensatory damages to compensate for pain,
      suffering, emotional distress, and humiliation that the plaintiff has suffered as a
      result of defendants' conduct;

24

c.     that plaintiff be awarded punitive damages in amount sufficient to punish defendants and to deter similar conduct;

d.     that plaintiff be awarded against defendants the costs and expenses of this litigation, and, a reasonable attorney's fee; and

g.     that plaintiff be awarded such further relief as this Court deems to be just and proper.

### Prayer for relief

**WHEREFORE**, Plaintiff prays that this Honorable Court:

1.     Enter a judgment that Defendants, by their actions, violated Plaintiff's rights under State law, and violated the Plaintiff's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution the United States, and 42 USC §1983; and

2.     Enter a judgment, jointly and severally, against Ithaca College and the Individual Defendants for compensatory damages; and

3.     Enter a judgment, jointly and severally, against Ithaca College and the individual Defendants for punitive damages; and

4.     Enter an Order:

a.     Awarding Plaintiff's reasonable attorneys fees and litigation expenses pursuant to 42 USC § 1988; and

b.     Granting such other and further relief which to the Court seems just and proper.

### Demand for Jury Trial

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Date:  10/23/2018                          /s/ Kelsey W. Shannon
                                          Bar Role No. 520477
                                          Lynn Law Firm LLP
                                          750 M&T Bank Building
                                          101 South Salina St.
                                          Syracuse, NY  13202
                                          Tel:  (315)-474-1267
                                          Fax:  (315)-474-4514
                                          kshannon@lynnlaw.com


                                          G. Clinton Kelley
                                          (*Pro Hac Vice* Application Forthcoming)
                                          Pa.I.D. No. 53494
                                          304 Ross Street - 7th Floor
                                          Pittsburgh, PA 15219
                                          (412) 454-5599        (Telephone)
                                          (412)712-9749         (Facsimile)
                                          gckesq@gmail.com      (Email)

                                          *Attorneys for Plaintiff Christopher Kelley*