IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER ANDREW KELLEY,

Plaintiff,

v.

ITHACA COLLEGE, *et al.*,

Defendants.

Civil Action No.
3:18-CV-1082 (GLS/DEP)

---

APPEARANCES: OF COUNSEL:

FOR PLAINTIFF:

LYNN LAW FIRM, LLP
M&T Bank Building
101 South Salina Street
Suite 750
Syracuse, NY 13202

KELSEY W. SHANNON, ESQ.

FOR DEFENDANTS:

BOND SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202

LAURA H. HARSHBARGER, ESQ.
SUZANNE M. MESSER, ESQ.

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought by plaintiff Christopher Andrew Kelley, a gay male, pursuant to Title IX of the Education Amendments of

1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX") and 42 U.S.C. § 1983, against Ithaca College ("College") and two employees of the College, Daniel H. Robinson ("Robinson") and Susan Bassett ("Bassett"). In his complaint, as amended, plaintiff alleges that he was subject to disparate treatment, harassment, and retaliation on the basis of his sexual orientation while a member of the College's men's crew team, and that as a result of defendants' conduct, he was constructively removed from the team. Plaintiff further alleges that the individual defendants deprived him of his right to equal protection, arising under the Fourteenth Amendment to the United States Constitution, and that he was subjected to intentional infliction of emotional distress by defendant Robinson.

Currently pending before the court is a motion brought by defendants seeking dismissal of plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that defendants' motion to dismiss be granted, in part, but otherwise denied.

## I. BACKGROUND[1]

[1] In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546

A. Plaintiff's Exposure as Gay and the Culture of the College's Men's Rowing Team

Plaintiff entered the College as a freshman in the Fall of 2012. Dkt. No. 7 at 3-4. Shortly after enrolling, he joined the College's men's crew team. *See generally* Dkt. No. 7. At the end of his first semester, plaintiff was exposed as being gay while attending a party with other members of the College's men's and women's crew teams. *Id.* at 4. Upon learning of plaintiff's sexual orientation, an unidentified teammate informed defendant Robinson, the coach of the men's crew team, that plaintiff "was gay so that 'he knew what to do with' plaintiff." *Id.*

Plaintiff claims that during his sophomore year at the College, defendant Robinson overheard plaintiff and his teammate discussing "a gay-related topic," and "accused plaintiff of being sexually perverse after hearing the portion of this conversation." Dkt. No. 7 at 4. Plaintiff further alleges that during the same school year, 2013-2014, a sophomore teammate, who is also gay, was harassed and abused by a freshman team member. *Id.* According to plaintiff, defendant Robinson failed to take corrective action regarding the harassment and abuse and allowed the

(1964). As will be seen, defendants contend that certain extrinsic materials are also properly considered when ruling upon their dismissal motion. *See* pp. 28-34, *post.*

offending freshman to practice with the team, despite the fact that he was "written up five times for calling his gay roommate a 'faggot' and being placed on probation for this." *Id.*

Also during his sophomore year, plaintiff and three other students formed a local chapter of Athlete Ally, an international organization of gay athletes founded during the 2014 Winter Olympics held in Sochi, Russia. Dkt. No. 7 at 5. Through the formation of the local chapter, plaintiff attempted to "create a culture of respect" amongst his teammates, and to educate his team—as well as defendant Robinson—about the impact of harassment and bullying of gay team members. *Id.*

Despite plaintiff's efforts, two rowers were exposed as gay and harassed by members of the crew team during plaintiff's junior year. Dkt. No. 7 at 5. Plaintiff brought the incident to defendant Robinson's attention, who "promised to have a meeting and get into the issue[.]" *Id.* That promised meeting never occurred, however, nor were the responsible parties reprimanded or disciplined for their actions. *Id.* In addition, during the Fall of plaintiff's junior year, three unexposed, gay athletes left the team, allegedly "because they did not feel comfortable with the homophobic culture" on the men's crew team. *Id.*

Plaintiff generally claims that during his tenure on the team, defendant Robinson fostered a culture in which heterosexual members of the team were treated more favorably than his homosexual teammates, including through being rewarded with more desirable boat seats in races. Dkt. No. 7 at 11. Those heterosexual team members "were neither reprimanded, nor disciplined, for calling gay team members 'fag', 'faggot', or other derogatory and repugnant terms." *Id.*

B. *The Ithacan*, *Pittsburgh Post-Gazette*, and *Outsports*

At some point, plaintiff gave an interview to the College's student newspaper, *The Ithacan*, in which he expressed opposition to the athletic department's "use of $3.4 million worth of funding to rebrand the Ithaca [College] athletics as 'one team.' "[2] Dkt. No. 7 at 6. In the interview, plaintiff emphasized the need to implement "safety precautions . . . for LGBTQ+ athletes," suggesting that a portion of the funding should be used to support that goal. *Id.* Plaintiff further "suggested that the Leadership Academy incorporate the topic of tolerance into its teaching, so that homophobic athletes would be held accountable for their actions and

[2] While plaintiff's complaint alleges that this interview occurred in "March 2014, i.e. the spring of plaintiff's junior year," Dkt. No. 7 at 6, I note that the spring of plaintiff's junior year would have occurred in 2015.

words."[3] *Id.* Plaintiff's interview "drew harsh criticism" from defendant Bassett, the Ithaca College Athletic Director, and non-party Greg Shelley, the Director of the Leadership Academy. *Id.* Bassett, in particular, was quoted in the article as commenting "that LGBTQ [a]thletic issues have no place in the Leadership Academy." *Id.*

At the crew banquet at the end of plaintiff's junior year, an election was to be held, by tradition, to elect a team captain for the coming year. Dkt. No. 7 at 6-7. Plaintiff believed that he "had the votes to be elected [c]aptain [of the men's crew team] for the 2015-2016 school year *Id*. Plaintiff claims that defendant Robinson broke with the team tradition, however, and announced at the banquet that he was going to appoint a rising underclass student as captain, without a team vote. *Id.*

In the summer of 2015, an editorial authored by plaintiff, in which he identified himself as the president of the local chapter of Athlete Ally, was published by the *Pittsburgh Post-Gazette*. Dkt. No. 7 at 7; *see* Kelley, Christopher, *PG Column Will Serve to Propagate Transphobia*, PITTSBURGH POST-GAZETTE, at B4, *available at* 2015 WLNR 16655820. Plaintiff forwarded his published editorial to *Outsports*, prompting the

---

[3] Plaintiff's complaint fails to provide any context that could explain the Leadership Academy as it relates to the men's crew team, the College's athletics program, or the College generally. *See generally* Dkt. No. 7.

website to ask him "to write his coming out story to coincide with June as national pride month." *Id. Outsports* thereafter published an article in which plaintiff detailed his experiences at Ithaca College and as a member of the men's crew team.[4] *Id.*; *see also* Kelley, Chris, *After Being Outed, College Rower Forges His Own Path*, OUTSPORTS (Jun. 24, 2015, 12:20 a.m.), https://www.outsports.com/2015/6/24/8836305/chris-kelley-ithaca-college-rowing-gay-coming-out (last accessed May 22, 2019) (hereinafter, the "*Outsports* Article").

In that article, plaintiff began by describing an incident where, as an underage freshman, he was forced to binge-drink vodka, whipped cream, and chocolate sauce at a crew party. In July of 2015, following publication of the *Outsports* Article, defendant Robinson repeatedly telephoned plaintiff and "verbally berated [him]." Dkt. No. 7 at 7. According to plaintiff, defendant specifically stated to him "you . . . embarrassed me," "I can't believe you would write something like this," "it's horrible," "it's a disgrace," it's awful," and "you should be ashamed of yourself." *Id.*

C. The Aftermath of the *Outsports* Article and Plaintiff's Suspension

[4] Although that article was not attached to plaintiff's amended complaint, it is referred to extensively throughout the amended pleading and plaintiff does not appear to oppose consideration of the article at this juncture. I have therefore considered the article in addressing defendants' dismissal motion.

In late July or early August of 2015, defendant Robinson advised plaintiff that the entire crew team would be punished because of the hazing incident described by Kelley in the *Outsports* Article. Dkt. No. 7 at 7-8. While the team was disqualified from participating in the "Challenge at the Canal" race, plaintiff was told he was being suspended for the entirety of the fall racing season. *Id.* Defendant Robinson indicated that this determination was made by defendant Bassett *Id.*

After learning of the punishment, plaintiff contacted defendant Bassett and "informed her that he had not been hazed, this situation was not about hazing, and that everyone should row." Dkt. No. 7 at 8. Defendant Bassett responded that the decision to suspend plaintiff had been made by defendant Robinson and the women's crew team coach, non-party Becky Robinson, in consultation with defendant Bassett. *Id.* Defendant Bassett claimed that "the team was not being punished for plaintiff's article, but instead being held accountable for the behavior described in the article" as plaintiff's "article was damaging to the [College's] crew team." *Id.* Plaintiff alleges that defendant Bassett's explanation was pretextual because she was aware that the crew team attended parties that involved alcohol and underage drinking. *Id.* Plaintiff

also questions why he, the purported target of the hazing incident, was being punished more severely than the other participants in the hazing. *Id.*

D. September 9-10, 2015 Meetings and Plaintiff's "Constructive Discharge" from the Crew Team

When plaintiff returned for the fall semester of his senior year, he met with defendant Bassett,[5] who had a copy of the *Outsports* Article in plain view on her desk during the meeting. Dkt. No. 7 at 9. At that time, plaintiff was informed that the "punishment to be incurred for this situation" was the following:

> (1) that the men and women's [College] crew teams were disqualified from the 'Challenge at the Canal' race; (2) that the men's and women's teams were to have a mandatory meeting with . . . the Director of [the College's] Leadership Academy; (3) that the plaintiff was to lead in alcohol awareness program for the 'novices' (first year rowers) in order to let them know that drinking was not appropriate; and (4) that plaintiff was suspended for the first two races of the fall race season, but that he could still practice with the team.

*Id.* [6]

---

[5] Although plaintiff's amended complaint does not disclose the precise date of his meeting with defendant Bassett, it appears to have occurred at some point prior to September 9, 2015. Dkt. No. 7 at 9.

[6] It is unclear from the amended complaint why plaintiff was first told that he was suspended for the entirety of the racing season, but later told that he "was suspended for the first two races of the fall race season." *Compare* Dkt. No. 7 at 8, *with id.* at 9.

Following that meeting, the "men's crew team gave plaintiff the silent treatment," would not permit him to ride in their cars to the boathouse for daily practice, and refused to eat with him in the cafeteria. Dkt. No. 7 at 9. Moreover, plaintiff was not assigned to a boat during practice and rowed only once during the time period between his meeting with defendant Bassett and September 9, 2015. *Id.*

Defendant Robinson scheduled a meeting with the men's crew team for September 9, 2015. Dkt. No. 7 at 10. Prior to the meeting, Robinson indicated that he "had just learned what a 'micro aggression' was" and advised plaintiff "not to be upset when [plaintiff was] called a 'fag', and that he should not sweat the small stuff." *Id.*

At the scheduled meeting, defendant Robinson asked plaintiff to stand next to him while he read aloud the first paragraph of the *Outsports* Article and asked the team what was wrong with the activities it described. Dkt. No. 7 at 10. There was no response to the question which, plaintiff suggests, indicates "that no one thought that there was anything wrong with the activity referenced in the first paragraph of the article." *Id.*

When a team coxswain spoke in favor of plaintiff, however, defendant Robinson responded that the meeting had not been "called for that purpose." *Id.* After that meeting, plaintiff "again ate alone in [the]

school cafeteria, and continued to feel uncomfortable with how he was being treated by [defendant] Robinson and the other members of the [College's] men's crew team." *Id.*

Another meeting was scheduled for September 10, 2015 for both the men's and women's crew teams, although the amended complaint does not disclose the subjects to be addressed or stated purpose of that meeting.[7] Dkt. No. 7 at 10. Although plaintiff concedes that attendance at the meeting was "mandatory," the College's administration "was notified that he would not be attending." *Id.* at 11. Plaintiff alleges that on September 10, 2015, he was "constructively terminated from the [College's] men's crew team, and/or forced to quit the [College's] men's crew team because he was so uncomfortable with how he was being treated by [defendant Robinson] and the men's crew team that he felt he could not remain a member of the team." *Id.*

In the aftermath of plaintiff's alleged constructive termination from the team, on October 29, 2015, the College announced

> that it had created a plan to make the college a more inclusive, diverse and welcoming community for all regardless of . . . sexual orientation . . . . [The College] noted in its announcement that several

---

[7]     It appears, although it is not entirely clear, that the meeting may have been the Leadership Academy meeting, which was mentioned during the prior meeting with defendant Bassett. Dkt. No. 7 at 9-10.

> incidents this fall [the fall of 2015] have served as fresh and painful reminders of a longstanding problem on [the] campus surrounding issues of racism and cultural bias.

Dkt. No. 7 at 11 (alterations in original). Plaintiff further alleges that on the same day, "a detailed account of the circumstances of plaintiff's having been constructively terminated from and/or forced to quit the [College's] men's crew team was provided to [Nancy Pringle, Senior Vice president and General Counsel of the College,] . . . [which] included the *Pittsburgh Post-Gazette* letter to the editor, the *Outsports* [A]rticle, and [defendant] Robinson's response to the *Outsports* [A]rticle." *Id.* at 11-12. Thereafter, the College commenced an "internal and external" investigation regarding "plaintiff's situation," the final results of which "were not released" to plaintiff. *Id.* at 12.

II. <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on September 10, 2018. Dkt. No. 1. In his initial complaint, plaintiff named as defendants Ithaca College, Susan Bassett, Daniel H. Robinson, and Becky M. Robinson. *Id.* On October 23, 2018, as a matter of course, plaintiff filed an amended complaint, naming Ithaca College, Susan Bassett, Daniel H. Robinson as defendants, but omitting claims against defendant Becky M. Robinson. Dkt. No. 7. In that pleading, plaintiff has asserted claims for (1) disparate

treatment, deliberate indifference to harassment, and retaliation, in violation of Title IX, against the College (counts one through three); (2) violation of his right to equal protection, arising under the Fourteenth Amendment, against defendants Robinson (count four) and Bassett (count five); and (3) a state law claim for intentional infliction of emotional distress, against defendant Robinson (count six).[8] *Id.* As relief, in his complaint, plaintiff seeks compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988. *Id.* at 13-14, 16, 17-18, 20, 243, 24-25, 26. In addition, his complaint makes a passing request for permanent injunctive relief against the College, prohibiting discrimination and retaliation against him based on his sexual orientation. *Id.* at 13-14, 16, 17-18, 20, 23.

On November 20, 2018, in lieu of answering, defendants moved for dismissal of each of plaintiff's six causes of action for failure to state a cognizable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 11. Plaintiff responded to the motion on January 14, 2019, opposing defendants' efforts to dismiss his Title IX

---

8 Although plaintiff's amended complaint pleads six discrete causes of action as outlined herein, in his prayer for relief, he inexplicably seeks "judgment that [d]efendants . . . violated [p]laintiff's rights" arising under, *inter alia*, the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution. Dkt. No. 7 at 25.

claims, but failing to respond to the portion of the motion challenging the sufficiency of plaintiff's fourth through sixth causes of action against the individual defendants. Dkt. No. 15. On January 28, 2019, defendants submitted a reply in further support of their motion. Dkt. No. 17.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). *See* Dkt. No. 16. Oral argument was held in connection with defendants' motion on May 8, 2019, at which time decision was reserved. *See* Text Minute Entry, date 05/08/2019.

## III. DISCUSSION

### A. Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the

pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper*, 378 U.S. at 546; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks and alterations

omitted).

B. Statute of Limitations – Generally

Central to defendants' motion is their contention that plaintiff's claims are time-barred by the applicable statutes of limitations. *See generally* Dkt. No. 11-3.

"A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)." *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). It should be noted, however, that a claim that a cause of action is time-barred presents an affirmative defense. *See Sledge v. Guest*, 107 F.3d 4 (2d Cir. 1996) (citing Fed. R. Civ. P. 8(c)). As a result, " '[c]omplaints need not anticipate, or attempt to plead around, potential affirmative defenses.' " *Cooper Crouse-Hinds, LLC v. City of Syracuse*, 16-CV-1201, 2018 WL 840056, at *4 (N.D.N.Y. Feb. 18, 2018) (D'Agostino, J.) (alteration in original) (quoting *High Falls Brewing Co., LLC v. Boston Beer Corp.*, 852 F. Supp. 2d 306, 310 (W.D.N.Y. 2011)). "Requiring [the] plaintiff[] to allege in a complaint facts sufficient to overcome a statute of limitations affirmative defense would shift the burden to raise and prove the affirmative defense from

defendants, as the burden is allocated and imposed by Rule 8(c)(1) of the Federal Rules of Civil Procedure, to [the] plaintiff[]." *Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54, 2013 WL 4015342, at *4 (W.D.N.Y. Aug. 6, 2013).

Generally, dismissal based on the statute of limitation under Rule 12(b)(6) is "irregular" and must usually wait until a later stage of the proceedings. *U.S. v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Dismissal of a claim at the pleading stage based on a statute of limitations affirmative defense "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016) (quoting *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010)); *see also Cooper Crouse-Hinds, LLC*, 2018 WL 840056, at *4 ("[A] complaint may be dismissed under Federal Rule of Procedure 12(b)(6) as barred by a statute of limitations where the complaint clearly shows that the plaintiff's claim is barred.") (citing *Messeroux v. Maimonides Med. Ctr.*, No. 11-CV-05343, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013)); *see also Harris*, 186 F.3d at 250.

C. Statute of Limitations – Title IX Claims

"Title IX does not contain a statute of limitations." *Curto v. Edmunson*, 392 F.3d 502, 503-04 (2d. Cir. 2004). In accordance with its "practice of borrowing the state statute of limitations for personal injury actions," the Second Circuit has determined that claims brought pursuant to Title IX are subject to a three-year statute of limitations in New York. *Curto*, 392 F.3d at 503-04; *see Beal v. SUNY Cortland*, 16-CV-666, 2016 WL 6242114, at *4 (N.D.N.Y. Jun. 21, 2016) (Baxter, J.) (citing *Curto*), *report and recommendation adopted by* 2016 WL 6238573 (N.D.N.Y. Oct. 25, 2016) (Sannes, J.). Importantly, however, the accrual of Title IX claims is governed by federal law. *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014). As a result, a cause of action generally accrues " 'when it comes into existence,' " such as, for example, " 'when the plaintiff has a complete and present cause of action.' " *Id.* (quoting *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013)) (internal quotation marks omitted).

In light of these principles, the College, the only defendant named by plaintiff's Title IX causes of action, may only be held accountable for acts of discrimination, harassment, and deliberate indifference to harassment, based upon plaintiff's sexual orientation, as well as retaliation for having complained regarding that conduct, that resulted in the deprivation to plaintiff of an educational opportunity or benefit provided by the school

based upon sex, provided that this suit was filed prior to expiration of the governing three-year statute of limitations from accrual of the claim.[9] *See Curto*, 392 F.3d at 503-504 (citing N.Y. C.P.L.R. § 214(5)) ("Thus, all claims that accrued [more than three-years prior to commencement] . . . are time-barred.").

D. <u>Analysis</u>

Since this action was filed on September 10, 2018, and giving plaintiff the benefit of Federal Rule of Civil Procedure 6(a)(1)(C), any Title IX claim that accrued prior to September 8, 2015 would be untimely.[10] In

---

9 At least in the Second Circuit, and pending guidance from the Supreme Court, sexual orientation discrimination is prohibited by Title IX. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 122 (2d Cir. 2018), *certiorari granted sub nom. Altitude Express, Inc. v. Zarda*, 2019 WL 1756678 (U.S. Apr. 22, 2019). While *Zarda* was decided within the framework of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), "courts in this Circuit, and others, analyze Title IX claims under the Title VII framework." *Bucklen v. Rensselear Polytechnic Inst.*, 166 F. Supp. 2d 721, 726 (N.D.N.Y. 2001) (Scullin, J.); *see also Papelino v. Albany Coll. of Pharm. Of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) ([A] Title IX sex discrimination claim requires the same kind of proof required in a Title VII sex discrimination claim.").

Significantly, on April 22, 2019, the Supreme Court granted petitions for writs of certiorari in *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 122 (2d Cir. 2018), *cert. granted sub nom. Altitude Express, Inc. v. Zarda*, 2019 WL 1756678 (U.S. Apr. 22, 2019), as well as *Bostock v. Clayton Cty. Bd. of Comm'rs*, 723 F. App'x 964 (11th Cir. 2018), *cert. granted sub nom. Bostock v. Clayton Cty., Ga.*, 2019 WL 1756677 (U.S. Apr. 22, 2019), both of which concluded that Title VII's prohibition on sex discrimination encompasses discrimination based on an individual's sexual orientation. Thus, the fate of *Zarda*'s precedential effect remains to be seen upon oral argument and decision during the Supreme Court's next term, beginning in October 2019.

10 In his papers, plaintiff argues that any limitation period that would have expired on September 8 or 9, 2018, a Saturday and Sunday, respectively, would not expire until the next business day, September 10, 2018, pursuant to the dictates of Rule 6(a)(1)(C) of the Federal Rule of Civil Procedure. *See* Dkt. No. 15 at 10. Accordingly,

opposition to defendants' motion, however, plaintiff argues that the acts occurring prior to that date could be considered as part of his Title IX claims both as part of a continuing violation, and because the College agreed to waive its statute of limitations defense. Dkt. No. 15 at 9-15. More specifically, plaintiff argues that the continuing violation doctrine applies, and that the events that occurred prior to plaintiff's "constructive termination" from the men's crew team on or about September 10, 2015 should therefore be considered timely since at least that one actionable event occurred within the three-year period predating the commencement of this action. Dkt. No. 15 at 10-11. Additionally, plaintiff argues that the College, through its general counsel, Nancy Pringle, Esq., agreed to waive the defense of timeliness and statute of limitations, and thus all events alleged in plaintiff's amended complaint may properly be considered in determining whether his rights under Title IX have been violated. *Id.* at 11-12.

1. The Continuing Violation Doctrine

In certain cases, the impact of the three-year limitation period can be ameliorated by the application of the " 'continuing violation' exception to

plaintiff argues that September 8, 2015 is the critical date for purposes of the statute of limitations. When questioned at oral argument concerning this calculation, defendants' counsel did not note any disagreement.

the normal knew-or-should-have-known accrual date of a discrimination claim[,]" effectively relieving a party from an earlier accrual date and permitting the inclusion of conduct outside of the limitation period that has bearing upon the issue of liability.[11] *Harris*, 186 F.3d at 248. Courts within the Second Circuit, however, have not looked favorably upon the doctrine's application, and apply it only when faced with "compelling circumstances." *Beal*, 2016 WL 6242114, at *6; *see Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) ("The continuing violations doctrine is disfavored and courts are hesitant to apply it absent a showing of compelling circumstances."); *see also Chandrapaul v. City Univ. of New York*, No. 14-CV-790, 2016 WL 1611468, at *13 (E.D.N.Y. Apr. 20, 2016); *see Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).

The continuing-violation exception to this timeliness requirement "may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for

---

11 While most often associated with claims arising under Title VII, the continuing violation doctrine has been applied in the context of Title IX claims. *See, e.g.*, *Papelino*, 633 F.3d at 91 (applying the continuing violation doctrine to plaintiff's hostile environment claims under Title IX).

so long as to amount to a discriminatory policy or practice." C*ornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *see Matthews v. CSX Transp., Inc.*, No. 17-CV-0448, 2018 WL 5069817, at *5 (N.D.N.Y. Oct. 17, 2018) (Suddaby, C.J.); *see also Schapiro v. New York City Dept. of Health*, 25 F. App'x 57, 60 (2d Cir. 2001)); *see also Cornwell*, 23 F.3d at 703. "[T]he plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (quoting *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013)).

"Importantly, the continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken 'pursuant to a general policy that results in other discrete acts occurring within the limitations period.' " *Rivas*, 745 F. App'x at 193 (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012); *see, e.g.*, *Morris v. New York State Police*, 268 F. Supp. 3d 342, 364-65 (N.D.N.Y. 2017) (Hurd, J.) (citing *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 545 (W.D.N.Y. 2016) (A continuing violation may not be premised on discrete incidents of discrimination not related to discriminatory policies or mechanisms.")). As a result, the doctrine  is not implicated "by 'multiple

incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism.' " *Troeger v. Ellenville Cent. Sch. Dist.*, No. 10-CV-718, 2012 WL 1605532, at *3 (N.D.N.Y. May 8, 2012) (Sharpe, J.) (quoting *Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d Cir. 2010)). Indeed, the Supreme Court has clarified that a separate and discrete act that occurs within a relevant limitation period cannot revive otherwise untimely allegations; rather, "[e]ach [discrete] discriminatory act starts a new clock for filing [a claim] alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *see generally Le v. New York State, Office of State Comptroller*, No. 16-CV-1517, 2017 WL 3084414, at *6 (N.D.N.Y. July 18, 2017) (Hurd, J.) (listing termination, disparate disciplining, negative performance evaluations, failure to promote, denial of a transfer, and refusal to hire as examples of discrete acts in the Title VII context). More simply put, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Nat'l R.R. Passenger Corp*, 536 U.S. at 113; *Morales v. NYS Dep't of Labor*, 865 F. Supp. 2d 220, 240 (N.D.N.Y. 2012) (Mordue, J.), *aff'd sub nom. Morales v. New York State Dep't of Labor, Div. of Emp't Servs.*, 530 F. App'x 13 (2d Cir. 2013). Applying this principle, "[i]t is well-

established that termination, whether through discharge or resignation, is a single act, discrete in nature," that does not serve to extend the statute of limitation and revive otherwise untimely claims. *Percy v. New York (Hudson Valley DTSO), Local 412 of the CSEA, Inc.*, 264 F. Supp. 3d 574, 582-83 (S.D.N.Y. 2017).

In opposition to defendants' motion, plaintiff seeks to cast his allegations as part of a "pattern of discrimination," arguing that he has alleged "specific and related instances of discrimination," invoking the application of the continuing violation doctrine. Dkt. No. 15 at 9. These efforts, however, fail for several reasons. Plaintiff has not alleged facts plausibly suggesting that his decision to leave the men's crew team on September 8, 2015, which plaintiff frames as a "constructive termination," resulted from the College's discriminatory policy or practice. *See generally* Dkt. No. 7; *see Johnson v. N.Y. Univ.*, 2018 WL 4908108, at *6 (S.D.N.Y. Oct. 10, 2018) (finding the continuing violation doctrine inapplicable where plaintiff alleged discrete events and failed to allege any ongoing discriminatory policy). Instead, plaintiff's allegations set forth "multiple individual acts that are not the result of a policy[,]" which are insufficient to invoke the doctrine. *Beal*, 2016 WL 6242114, at *5 (citing *Troeger*, 2012 WL 1605532, at *3).

Rather than plausibly alleging an ongoing, identifiable discriminatory policy, plaintiff's amended complaint is replete with allegations of separate and discrete acts that culminated in his alleged constructive termination from the crew team on September 10, 2015. *See generally* Dkt. No. 7. For example, plaintiff alleges, *inter alia*, that: (1) defendant Robinson accused him of "being sexually perverse" during his sophomore year; (2) during the year-end crew banquet of plaintiff's junior year, defendant Robinson appointed an underclassman to serve as captain as opposed to allowing the team to vote (an election that plaintiff claims he was sure to win); (2) during the summer of 2015, defendant Robinson "verbally berated" plaintiff for the content of the *Outsports* Article; (3) plaintiff was told that he was suspended for either "the entire fall race season" or "the first two races of the fall race season"; and (4) plaintiff was not assigned a boat during crew practices held prior to September 9, 2015. Dkt. No. 7 at 6-9. Plaintiff's constructive termination was a separate and discrete act that cannot revive his otherwise untimely harassment and retaliation allegations. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) ("The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period."); *Percy*, 264 F. Supp. 3d at 583 (collecting cases).

Even assuming the continuing violation doctrine applies to his claims, in his amended complaint, plaintiff alleges no acts of discrimination other than his constructive termination from the men's team, that would constitute an act of harassment sufficient to extend the statute of limitations. According to plaintiff's complaint, on September 9, 2015, prior to a team meeting, defendant Robinson advised plaintiff not to be upset when comments are made regarding his sexuality. Dkt. No. 7 at 10. At the team meeting, defendant Robinson read the first paragraph of the *Outsports* Article, which referred to underage binge drinking, and then asked what was wrong with the activity reference. *Id.* Neither of these acts was sufficiently linked by plaintiff to a policy or practice of discrimination, nor does it appear that they were taken with a discriminatory intent and based upon plaintiff's sexual orientation. Indeed, it appears from plaintiff's own vantage point that whatever discriminatory policy or practice may have existed previously at the College, by the summer of 2015 it had dissipated. Significantly, in the *Outsports* Article, which was published in June of 2015, the following statement is attributed to plaintiff.

> Since being outed and working with Athlete Ally, the culture on the crew team has shifted. There's an amazing sense of inclusivity, that everyone from any walk of life is welcome and appreciated. Every day, we come to practice to pull hard, and our sexual identities are checked at the door. After a

> while, I didn’t feel like an other — I wasn't 'that one gay kid.' I felt comfortable in my spandex.

Dkt. No. 11-2 at 6.

"At this pleading stage the focus is on whether plaintiff has sufficiently pled a continuing violation so as to extend the statute of limitations." *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 414 (N.D.N.Y. 2005) (McCurn, J.). In light of the untimely discrete acts alleged by plaintiff, plaintiff has failed to satisfy the requirements associated with invoking the application of the continuing violation doctrine. Considering that "courts of this Circuit have generally been loath to invoke the continuing violation and will apply it only upon a showing of compelling circumstances," I recommend the court conclude that plaintiff is not entitled to the application of the continuing violation doctrine, and that any conduct that occurred prior to September 8, 2015 is untimely. *Crosland v. City of New York*, 140 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (quoting *Falinski v. Kuntz,* 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999)), *aff'd sub nom. Crosland v. Safir*, 54 F. App'x 504 (2d Cir. 2002).

2. Waiver and the Declaration of Attorney Pringle

It is well-established that the statute of limitations is not jurisdictional, but rather is properly raised as an affirmative defense. *See Chimblo v. Comm. of Internal Revenue*, 177 F.3d 119, 125 (2d Cir. 1999) ("As a

general matter, the statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional."); *Masterpage Comm., Inc. v. Town of Olive, NN*, 418 F. Supp. 2d 66, 76 n. 5 (N.D.N.Y. 2005) (Mordue, J.). As an affirmative defense, a statute of limitations claim may be waived by a party, either by agreement or in failing to assert it as an affirmative defense. *Upstate Cellular Network v. City of Auburn*, 257 F. Supp. 3d 309, 313, n.2 (N.D.N.Y. 2017) (Hurd. J.) ("[D]efendants did not plead or raise the statute of limitations as an affirmative defense, and therefore, it is deemed waived ") (citing *Chimblo*, 177 F.3d at 125). A plaintiff claiming that a defendant has waived the defense by agreement bears the burden of proof in the issue of waiver.

Plaintiff's claim that the College agreed to waive the statute of limitations defense is set forth in the following single paragraph of his amended complaint, which alleges as follows:

> 74. On December 21, 2015, [Attorney] Pringle[,] the College's General Counsel,] entered into an agreement to waive the defense of timeliness and statute of limitations in connection with this matter.

Dkt. No. 7 at 12. Defendants counter by arguing that in her communications, Attorney Pringle did not intend to indefinitely extend the statute of limitations applicable to plaintiff's Title IX claims or waive the defense of timeliness. Dkt. No. 17 at 5-6. Rather, they maintain, the

College simply agreed "not to raise a timeliness argument in the event it was not able to complete the internal investigation into 'the allegations raised by [plaintiff] regarding his decision to leave the crew team' within the time to commence an *administrative* action." Dkt. No. 11-3 at 4. (emphasis added).

In support of their efforts to refute plaintiff's waiver argument, defendants have submitted a declaration from Attorney Pringle, in which she explains that after learning of plaintiff's complaints in September 2015, the College "elected to retain an independent investigator to investigate the allegations made by [p]laintiff." Dkt. No. 11-1 at 2. In December of 2015, when Attorney Pringle spoke with plaintiff's father, she indicated that the College " would waive any argument as to the timeliness of an administrative proceeding brought by [p]laintiff in the event that the College's investigation exceeded the time permitted to file such a proceeding." *Id.* at 1-2. Thus, according to Attorney Pringle, any purported waiver or tolling agreement was made only with regard to the one-year time limitation under the New York State Human Rights Law ("NYSHRL") and the 300-day time limitation applicable to claims filed before the Equal

Employment Opportunity Commission ("EEOC").[12] *Id.* at 2. The independent investigation concluded on May 26, 2015. *Id.*

Defendants contend that the statute of limitations began to run in September of 2015 at the latest, and thus at the time of the completion of the investigation in May 2015, plaintiff was well within the applicable time periods for filing under both the NYSHRL and EEOC. Dkt. No. 11-1 at 2. Consequently, Attorney Pringle argues that "there was no need for the College to waive any time limitations, as no tolling was required, and therefore, the condition precedent that would have triggered any agreement to not raise a time bar limitation never occurred." *Id.*

In opposition, however, plaintiff maintains that the court may not properly consider the declaration of Attorney Pringle since it is not attached to, incorporated by reference into, or integral to his complaint. Dkt. No. 15 at 9. While it is well-established that when ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must generally confine its

---

[12]     Reference to the 300-day time limit to file a charge of discrimination before the EEOC and the one-year limitation for filing an administrative complaint with the New York State Division of Human Rights is baffling, since there is no such requirement for a plaintiff, a student of the College, to exhaust his administrative remedies before the EEOC under the circumstances presented in plaintiff's amended complaint. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) ("Title IX has no administrative exhaustion requirement and no notice provisions."); *see also Williams v. City of New York*, 121 F. Supp. 3d 354, 370 (S.D.N.Y. 2015) (discussing that pursuant to Title IX, plaintiffs can file directly in court without first pursuing administrative remedies).

analysis to the "four corners of the complaint . . . and the allegations contained therein," there are circumstances where the court may consider extrinsic materials beyond the complaint. *See, e.g*, *Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.,* 13-CV-1393, 2018 WL 851382, at *22 (N.D.N.Y. Feb. 12, 2018) (Suddaby, C.J.) (quoting *Islip U-Slip LLC v. Gander Mt. Co.*, 2 F. Supp. 3d 296, 301 (N.D.N.Y. 2014) (D'Agostino, J.)). Specifically, when analyzing a motion to dismiss, "the [c]ourt may consider documents attached as an exhibit thereto or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Islip U-Slip LLC*, 2 F. Supp. 3d at 301 (citing *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)). Even when it is not attached to a complaint or incorporated by reference, "a document upon which [the complaint] *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on a 12(b)(6) motion." *Robert H. Law, Inc.*, 2018 WL 851382, at *22 (emphasis and alteration in original) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)) (internal quotation marks omitted). "A document is considered integral to the complaint where the complaint relies heavily upon its terms and effect." *Robert H. Law, Inc.*, 2018 WL 851382, at *22 (quoting *Goel v.*

*Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)) (internal quotation marks omitted). Furthermore, for proper consideration by the court, "it must be clear from the record that (1) no dispute exists regarding the authenticity or accuracy of the document, and (2) no dispute exists regarding the relevance of the document." *Robert H. Law, Inc.*, 2018 WL 851382, at *22 (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

Because the Pringle declaration is neither incorporated by reference into plaintiff's amended complaint nor is it integral to the amended pleading, the court is unable to consider either the declaration or its attachments at this procedural juncture. *See Islip U-Slip LLC*, 2 F. Supp. 3d at 301. Even if the court could properly consider the Pringle declaration in connection with the pending motion, the record would still be incomplete regarding the exact terms of the purported waiver agreement. It is not clear to the court that the document relied upon by defendants—a unilateral e-mail by Attorney Pringle to plaintiff's father—fully outlines the terms of any agreement. *See* Dkt. No. 11-1 at 7. That e-mail, which is dated February 25, 2016, was in response to an e-mail from Mr. Kelley, dated January 15, 2016, inquiring concerning the waiver of timeliness that was apparently discussed in a conversation held on December 21, 2015. *Id.* at 5.

Without permitting the parties to engage in discovery to ascertain whether, in fact, the e-mail provided by defendants accurately and completely sets forth the terms of the parties' agreement as discussed on December 21, 2015, it would manifestly unfair to discount plaintiff's waiver argument and dismiss his complaint at this early procedural juncture. Indeed, the invitation by defendants to take that step demonstrates the inherent dangers of deciding a statute of limitations issue on pleadings without the benefit of a more robust record following discovery. The court is simply unable, at this time, to make a fully-informed determination with respect to any purported waiver agreement between the parties. *See generally Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009) (finding it error to dismiss plaintiff's complaint on the pleadings because "[t]he question of whether the statute of limitations has run turns on a number of unresolved issues of fact that would benefit from discovery.").

In sum, while I find that there is no basis for the court to apply the continuing violation doctrine, *see* Point III.D.1, *supra*, I am unable to conclude at this early stage, and without the benefit of discovery, whether the College agreed to waive its statute of limitations defense. Accordingly, I recommend that the motion to dismiss plaintiff's Title IX claims be denied, and that the parties be permitted to engage in limited discovery regarding

the statute of limitations and waiver issues, and that discovery with regard to the merits of plaintiff's claims be held in abeyance until the statute of limitations issue can be resolved by the court.

E. Defendants' Remaining Claims

As was previously indicated, counts four and five of plaintiff's amended complaint assert constitutional claims arising under the Fourteenth Amendment against defendants Robinson and Bassett, respectively, pursuant to 42 U.S.C. § 1983. Dkt. No. 7 at 18-23. Count six asserts a state law claim for intentional infliction of emotion distress against defendant Robinson. *Id.* at 24-25. Defendants argue that plaintiff's section 1983 claims fail based upon a lack of a showing of state action, as required to support those claims. Dkt. No. 11-3 at 14-15. In addition, they argue that the intentional infliction of emotional distress cause of action lacks merit since it does not allege the type of "extreme and outrageous conduct," transcending the bounds of decency, required in New York to support such a cause of action. *Id.* at 16.

In response to defendants' motion to dismiss his claims against the individual defendants, plaintiff states that he "does not oppose dismissal of counts four through six." Dkt. No. 15 at 2. That portion of defendants' motion is unopposed by plaintiff, and is facially meritorious. Plaintiff's

amended complaint is devoid of any allegations to support a finding that defendants Robinson and Bassett were engaged in state action at the relevant times, which is a prerequisite for a cause of action under section 1983. *See, e.g.*, *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) ("A private party violates [section] 1983 only to the extent its conduct involves state action."); *Wilson v. King*, No. 08-CV-0509, 2008 WL 2096593, at *1 (N.D.N.Y. May 16, 2008) (Sharpe, J.). Similarly, the amended complaint does not allege that defendant Robinson engaged in the type of extreme and outrageous behavior necessary to support an action under state law for intentional infliction of emotional distress.[13] *See, e.g.*, *Alexander v. City of Syracuse*, No. 17-CV-1195, 2018 WL 6591426, at *7-*8 (N.D.N.Y. Dec. 13, 2018) (Hurd, J.).

Accordingly, I recommend that plaintiff's fourth, fifth, and sixth causes of action in his amended complaint be dismissed. *See Stamm v. Onondaga Cty.*, No. 17-CV-0579, 2019 WL 1004527, at *26 (N.D.N.Y. Mar. 1, 2019) (Suddaby, J.) ("Stated another way, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess

---

13 I note that as an intentional tort, plaintiff's sixth cause of action is subject to an abbreviated one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3)).

facial merit, which has appropriately been characterized as a 'modest' burden."); *see also Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.).

## IV. SUMMARY AND RECOMMENDATION

Plaintiff does not oppose dismissal of the fourth, fifth, and sixth causes of action against the individual defendants. Defendants' arguments in support of dismissal of those claims are facially meritorious, and as a result, they should be dismissed. Plaintiff's Title IX claims against the College, however, while not subject to the continuing violation doctrine, cannot be dismissed at this early juncture, in light of plaintiff's allegation that the College has waived its right to assert a statute of limitations of defense in response to those causes of action.[14]

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 11) be GRANTED, in part, and that his claims against defendants Daniel H. Robinson and Susan Bassett, and plaintiff's claims for injunctive relief, be DISMISSED, but that the motion otherwise be DENIED, and that the

---

[14] The court agrees with defendants' assessment that plaintiff's request for preliminary injunctive relief must be denied as moot, since it is apparent that he has graduated and is no longer a student at the College. *Brief v. Albert Einstein Coll. of Medicine*, 423 F. App'x 88 (2d Cir. 2011) ("[B]ecause [plaintiff] has now graduated from medical school, . . . his claim for injunctive relief is moot.") (citing *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994).

parties be permitted to engage in discovery, limited to the issue of the statute of limitation defense and any alleged waiver of that defense, without prejudice to renewal of the statute of limitations defense on a motion for summary judgment or at trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    June 18, 2019
          Syracuse, New York